## Radcliffe *v.* Hollyfield, Appellant.

*Malicious prosecution—Charge—Guilt or innocence of plaintiff.*

On the trial of an action for malicious prosecution, it is reversible error for the court to charge in such a way that the jury may be led to believe that the crucial test of the plaintiff's right to recover was his guilt or innocence; and this is the case although the court may have correctly stated the law in other parts of the charge, and the language complained of was an inadvertence.

*Malicious prosecution—Advice of counsel.*

The advice of counsel operates as a defense in an action for malicious prosecution only when sought in good faith and founded on a complete and accurate statement of all the facts within the knowledge of the prosecutor.

Argued Oct. 18, 1906. Appeal, No. 132, Oct. T., 1906, by defendant, from judgment of C. P. Washington Co., Feb. T.,

1905, No. 256, on verdict for plaintiff in case of Fred Radcliffe
v. C. C. Hollyfield and the Singer Sewing Machine Company.
Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POT-
TER, ELKIN and STEWART, JJ.   Reversed.

Trespass to recover damages for malicious prosecution.   Be-
fore McILVAINE, P. J.

The court charged in part as follows :

[Now, the question arising here is—did Mr. Radcliffe em-
bezzle or fraudulently appropriate any part of these items that
have been enumerated to his own use?   Now, gentlemen, the
plaintiff sets up one theory and the defendant another.   The
plaintiff claims that he had been in the employ of the Singer
Manufacturing Company for quite a while.   He has narrated to
you the manner in which the business is done, the goods
shipped to the local office at Charleroi ; how the company
keeps track of the business and how the returns are made by
the agent, and he claims that in this settlement where this
$98.60 is claimed to be due, that it was a disputed claim.   I
believe the plaintiff on the stand, the last day that he was
called back, denied that he owed the company anything, said
that if there was a proper settlement and he was given credit
for all the commissions that were due him, that they still owed
him something yet.   Now, his theory is—his contention is that if
you would find that that was true—that the manner the business
was run there was such that these claims were fairly disputed
as to whether he was accountable for them or not, would neg-
ative the idea entirely, and conclusively rebut it that he fraud-
ulently appropriated any of this property to his own use.   And
that would be true, gentlemen ; a man who occupies a trust
relation such as Mr. Radcliffe did there, that is, if the accounts
of a man, that was managing property to be sold and to ac-
count for the proceeds, get into such shape that there is fairly
disputed question between them as to what is due or whether
he owes anything at all or not, that raises such a condition of
affairs as to rebut the idea that the property in dispute was
fraudulently appropriated.   If there was a fair claim that he
should retain that property in order to meet the claim that he
had against the company, why that would not be a fraudulent

appropriation. It is just the same question exactly as that involved in larceny. If a perfect stranger break into your barn at night and take away a horse and sell it and put the money in his pocket, there cannot be very much doubt about his intent being felonious. But if he happen to be a neighbor of yours and you had bought that horse from him a day or so before and had made misrepresentations and cheated him so that he claimed that the title did not pass to you and he went over to your stable and took it back to his place and sent you word that he rescinded the contract and had taken the horse, why you would not have a very good show to sustain a charge of larceny, because the criminal intent would be negatived by the circumstances that surrounded the taking, although the physical act of taking might be just exactly the same in one case as the other. And the same way in a case where there is a settlement between two parties. If the facts in the case show that the property that is alleged to be still in the hands of the agent is retained by him and he refuses to account for it on what is a fair showing of the case that he does not owe the other party anything, why it would negative the idea that he fraudulently intended to appropriate it.

Now, that is the claim here, as I understand it, of the plaintiff; he claims that the circumstances surrounding the conduct of the business and the liability to mistakes and things of that kind account for these different things here that are named by the company as being in the possession of the plaintiff, and that if there was an honest settlement that he would not owe them anything. If he does not owe them anything, of course he has not fraudulently appropriated anything that was committed to his hands.

Now, gentlemen, as to the parts of the machines—needles, etc., he has accounted for some of these by showing that another party had taken them, and perhaps the same may be said in regard to the collections and these overpaid commissions; so that the contest narrows itself down very largely to the two machines—whether or not he has embezzled the two machines that are missing.

It is admitted here, or at least claimed by the defendant, that it has been sufficiently proven and not seriously contested, that there were two machines placed in the hands of the plaintiff

Radcliffe and for which he receipted, that have not been returned
and that they are missing.  Now, did he fraudulently appro-
priate those machines, either the machines themselves or the
money that they may have been sold for, if they were sold, to
his own use?] [1]

[We have a well-established principle, gentlemen, that where
a man who is a layman, and not supposed to know the law, goes
to one learned in the law, and especially would that be true
where he went to the district attorney who is under oath to
represent fairly and honestly both the commonwealth and the
defendant in criminal prosecutions—where he goes to the dis-
trict attorney and honestly lays all the facts bearing upon the
question before him, and the district attorney tells him that
those facts make out a case of probable cause, for him to go
ahead and make an information; it is a complete protection.
Because that very act of going before a district attorney and
telling him all the facts and following his advice conclusively
negatives the idea of malice, and it always ought to be conclu-
sive on the question of probable cause, at least until the dis-
trict attorney would be in some way shown as being in collusion
with him—and of course there is nothing of that kind here in
this case.  Now, you see that this is another condition of affairs
which may exist in cases of this kind that must also have the
consideration of a jury.  You will notice that I said that where
a man went before the district attorney and gave him all the
facts bearing on the question and the district attorney advised
him and he followed his advice, it is a complete protection.
Now, it very frequently happens that the claim is set up by a
plaintiff in cases of this kind where that defense is injected
that the defendant when acting as the prosecutor had not told
all the facts that he should have told the district attorney;
lawyers all know how frequently they give advice that does
not bring good results and sometimes the client may justly
blame the lawyer, but in nine cases out of ten it is not the law-
yer's fault; it is the client's fault because he told him a great
many things that he could not establish; when he advised him
to proceed in a certain case it was on condition that the client
that was getting the advice was telling the whole truth.  Now,
it is very important here in a case of this kind to know that the
whole truth was told by Mr. Hollyfield to the district attorney

because the district attorney's advice is a perfect protection if he revealed what was substantially the whole truth. It was not necessary, of course, to take as much time in telling the district attorney as we have in trying the case, but did he honestly in good faith substantially lay all these material facts before the district attorney that are involved in this case ? If he did and the district attorney advised the prosecution, that is a protection. Now, that is controverted here and it will be for you to say, gentlemen, whether or not Mr. Hollyfield, taking the district attorney's testimony and his own testimony, whether or not he failed to give the plaintiff's theory here of this case to the district attorney when in good faith he ought to have done that. Now, that is the claim of the plaintiff, that is that if he wanted to be honest about the matter he ought to have given to the district attorney what he knew was the claim of the plaintiff. As I said before, of course, it would lead again (if that was not done) to the question whether or not the claim of the plaintiff in regard to the lost machines was a reasonable claim to be made in view of the other facts found.

Now, gentlemen, there is something said here by the district attorney that requires me to say a word further. The district attorney says that at a certain stage in his interview with Mr. Hollyfield he said to him : " I don't think you need to say anything further about the matter; what you have said already is enough to show probable cause here and you are justified in making an information on what you have already stated." Well, now, whether or not that relieved Mr. Hollyfield is also a question for the jury. In case Mr. Hollyfield had stated what he thought was substantially and what was substantially all the matters involved, why stopping him there by the district attorney and saying that was enough would be a protection. But if he had only told half his story and it was the incriminating part of his story and there was another part of it back that explained away those incriminating circumstances—it would have been Mr. Hollyfield's duty to have said to the district attorney : " Well, you had better hear the other half of this story because it is a little different—other than that I have told—and it may modify your opinion." The district attorney had a right to say that because he meant by saying that, that if that is the condition of this case and there is nothing to qualify it there

is probable cause there and go ahead, and if Mr. Hollyfield knew something that would explain away that, then it would be his duty to say to the district attorney, " I have other matters that may modify your opinion," and he should have told him the whole thing, and if he purposely refrained from doing that and allowed the district attorney to be substantially misled in that way by not having the whole story, then it would not be a protection, because that would not be an honest narration of all the facts that he ought in law to lay before the attorney in order to get the advice that would be a protection.] [2]

Verdict and judgment for plaintiff for $3,000. Defendant appealed.

*Errors assigned* were (1, 2) above instructions, quoting them.

*Norman E. Clark*, with him *W. S. Parker* and *Winfield McIlvaine*, for appellant, cited: Seibert v. Price, 5 W. & S. 438; Smith v. Ege, 52 Pa. 419; Gilliford v. Windel, 108 Pa. 142; Cooper v. Hart, 147 Pa. 594; Fisher v. Forrester, 33 Pa. 501; Sutton v. Anderson, 103 Pa. 151; Bankell v. Weinacht, 99 App. Div. 316 (91 N. Y. Supp. 107); Bruff v. Kendrick, 21 Pa. Superior Ct. 468; Scott v. Dewey, 23 Pa. Superior Ct. 396; Ruffner v. Hooks, 2 Pa. Superior Ct. 278; Mitchell v. Logan, 172 Pa. 349; Laughlin v. Clawson, 27 Pa. 328.

*R. W. Irwin*, of *Irwin, Wiley & Morgan*, for appellee, cited: Smith v. Walter, 125 Pa. 453; Barhight v. Tammany, 158 Pa. 545; Bell v. R. R. Co., 202 Pa. 178; Smith v. Ege, 52 Pa. 419; Bernar v. Dunlap, 94 Pa. 329; MacDonald v. Schroeder, 214 Pa. 411; Mitchell v. Logan, 172 Pa. 349; McCarthy v. DeArmit, 99 Pa. 63; Mahaffey v. Byers, 151 Pa. 92; Leahey v. March, 155 Pa. 458.

OPINION BY MR. JUSTICE FELL, January 7, 1907:

The part of the charge covered by the first assignment of error is open to the objection that it submitted to the jury a question not involved in the issue and made the liability of the defendant depend upon the guilt or innocence of the plain-

tiff.   The plaintiff had been arrested and prosecuted at the instance of the defendant on the charge of embezzlement as agent or bailee of sewing machines and supplies, consigned to him for sale or lease.   In submitting the case it was said: "Now, the question arising is—did Mr. Radcliffe embezzle or fraudulently appropriate any of those items that have been enumerated to his own use?"   Following a review.of the testimony this question was repeated in substantially the same words.   The real issue, whether the prosecution was brought in good faith and on probable cause, was very clearly stated in other parts of the charge, and the instruction was given that probable cause does not depend on what may appear at the trial but upon the knowledge and reasonable belief of the prosecutor when the prosecution was begun.   The error complained of did not result from a misunderstanding by the learned judge of the law governing the action.   It was inadvertently made in presenting to the jury the contentions of the parties, that of the plaintiff being that there was an honest dispute whether there was anything due by him on a settlement of his accounts, and that of the defendant that there had been an actual embezzlement.   It is evident from the whole charge that it was the intention of the court to submit to the jury only the question whether at the time of the examination of the plaintiff's accounts, before the prosecution was begun, there were reasonable grounds to suppose that he was guilty of embezzlement. But notwithstanding the clear and correct statements of the law in other parts of the charge, the jury may have been led to believe that the crucial test of the plaintiff's right to recover was his guilt or innocence.   We are therefore constrained to reverse the judgment.

The remaining assignments of error are without merit.   The advice of counsel operates as a defense only when sought in good faith and founded on a complete and accurate statement of all the facts within the knowledge of the prosecutor. Whether the defendant had sought the advice of the district attorney and made to him a full disclosure of all the facts within his knowledge, or had applied to him for assistance in bringing a prosecution already determined upon were matters of dispute and were properly submitted to the jury.

The judgment is reversed with a venire facias de novo.